**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| JOSEPH S. MITCHELL, | : | CIVIL ACTION NO. **3:CV-14-0905** |
| | : | |
| Plaintiff | : | (Judge Munley) |
| | : | |
| v. | : | (Magistrate Judge Blewitt) |
| | : | |
| J. SAGE, *et al.*, | : | |
| | : | |
| Defendants | : | |

<u>**REPORT AND RECOMMENDATION**</u>

**I.    BACKGROUND.**

On May 12, 2014, Plaintiff Joseph S. Mitchell, currently an inmate at United States

Penitentiary Lewisburg, Pennsylvania ("USP-Lewisburg"), filed, *pro se*, the instant *Bivens* civil rights

action pursuant to 28 U.S.C. § 1331.[1]   (**Doc. 1**).   Plaintiff also states in his Complaint that he is

asserting a tort claim against the United States under the Federal Tort Claims Act ("FTCA"), 28

U.S.C.  § 2675, *et seq*.  Plaintiff's Complaint consists of six (6) hand-written, single-spaced pages.

(*Id*.).  Plaintiff also filed an *in forma pauperis* Motion. (Doc. 6).

Plaintiff attached Exhibits (Doc. 1-1, pp. 1-25) to his Complaint, consisting, in part, of

BOP Health Services clinical administrative notes, inmate requests to staff, BOP administrative

---

[1]*See Bivens v. Six Unknown Named Agents of Fed. Bur. of Narcotics,* 403 U.S. 388, 91
S.Ct. 1999 (1971).   Plaintiff's actions fall within 28 U.S.C. § 1331 ("The district courts shall have
original jurisdiction of <u>all</u> civil actions arising under the Constitution, laws or treaties of the
United States." (Emphasis added).
     Plaintiff's Complaint is, in part, a *Bivens* actions under §1331 since he alleges federal
officials  violated his constitutional rights. *See Butz v. Economou,* 438 U.S. 478, 504, 98 S.Ct.
2894 (1978).

remedy request,  responses and appeals, a BOP incident report issued against Plaintiff, and a

Declaration from fellow inmate (Michael Little) dated May 6, 2014, in which Little avers that he

had been denied proper mental health care for his mental conditions during his confinement in

G-Unit (1) Range at USP-Lewisburg.  Plaintiff also attached a  Declaration from inmate Derrick

Miller dated April 26, 2014, in which Miller avers that Plaintiff was taken to his cell on February

11, 2014, after Plaintiff was taken off suicide watch and that Plaintiff told him he was going to

kill himself.  Miller also avers that Plaintiff began to cut himself on his writs and prison staff

removed Plaintiff from the cell.  Further, Miller avers that Plaintiff was returned to his cell 20

minutes later and stated he was going to cut his throat, and staff put Plaintiff in restraints.   (Doc.

1-1, p. 14).

     Plaintiff's Exhibits also include a copy of a letter to Warden Thomas dated April 2, 2014,

from a legal intern for the Washington Lawyers' Committee  complaining about Plaintiff's

treatment for depression and requesting prompt care.

     Plaintiff's Exhibits largely relate to his medical history at USP-Lewisburg. Plaintiff was

diagnosed with mental conditions, including depression, and he was treated for these conditions

prior to his transfer to USP-Lewisburg. (Doc. 1-1, p. 6).  Plaintiff states that he was prescribed

the medication bupropion before his transfer to USP-Lewisburg, and that after he arrived at

USP-Lewisburg, he was improperly taken off of bupropion.  Specifically, Plaintiff's BOP medical

records indicate Plaintiff was taken off of his medication bupropion on October 3, 2013,

pending review by the medical director since Plaintiff refused his last 3 doses of the medication.

(Doc. 1-1, p. 5). Plaintiff's medical records indicate that on February 4, 2014, Plaintiff was

placed on suicide watch and that on February 5, 2014, he threatened the prison mental health

staff and attempted to hang himself when the staff would not speak with him until he wore a

suicide smock. Plaintiff was then issued an Incident Report for threatening another with bodily

harm, BOP Code 203.  (*Id.* at 12-13).

Plaintiff states in his instant pleading that he exhausted his BOP administrative remedies.[2]

(Doc. 1, p. 2).  Plaintiff also states that he is filing his present action under the imminent danger

exception to the 3-strike rule of the PLRA, 28 U.S.C. §1915(g), and he alleges that he "is under

imminent danger without intervention of appropriate mental health care."[3]  (*Id.*).

This Court has jurisdiction over Plaintiff's action pursuant to 28 U.S.C. §1331 and

§1343(a).

We will now screen Plaintiff's Complaint in accordance with § 1915 of the PLRA.  *See*

*Abdul-Akbar v. McKelvie*, 239 F. 3d 307, 314 (3d Cir. 2001); *Banks v. County of Allegheny*, 568

---

[2]It is well-settled that the Plaintiff must exhaust all of his available administrative remedies with respect to each one of his claims prior to filing a civil rights suit.  In *Porter v. Nussle*, 534 U.S. 516, 532 (2002), the Supreme Court reiterated that the exhaustion requirement under § 1997e(a) applies to all actions regarding prisons conditions, including § 1983 actions or actions brought pursuant to any other federal law. The *Porter* Court held that "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Id.*  However, Defendants have the burden to plead exhaustion as an affirmative defense.  *See Ray v. Kertes*, 285 F.3d 287, 295 (3d Cir. 2002).
Plaintiff's Exhibits attached to his Complaint appear to indicate that he exhausted his BOP administrative remedies regrading his claim that he was not receiving his psychotropic medication.

[3]After any remaining Defendants are served with Plaintiff's Complaint, they can file a motion to have Plaintiff's *in forma pauperis* status revoked if appropriate under the 3-strike rule.

F.Supp.2d 579, 589 (W.D. Pa. 2008).

## II.   STANDARDS OF REVIEW.

### A.   PLRA

The Prison Litigation Reform Act of 1995,[4] (the "PLRA"), obligates the Court to engage in a screening process when a prisoner wishes to proceed *in forma pauperis* pursuant to 28 U.S.C. §1915.  Specifically, § 1915(e)(2), which was created by § 805(a)(5) of the Act, provides:

> (2) Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that (A) the allegation of poverty is untrue; or (B) the action or appeal (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief.

### B.   *BIVENS* STANDARD

A *Bivens* civil rights action under § 1331 has the same standards as does a § 1983 civil rights action.  *See Paton v. LaPrade*, 524 F.2d 862, 871 (3d Cir. 1975); *Veteto v. Miller*, 829 F.Supp. 1486, 1492 (M.D. Pa. 1992); *Young v. Keohane*, 809 F.Supp. 1185, 1200, n. 16 (M.D. Pa. 1992); *Mitchell v. Dodrill*, 696 F.Supp. 2d 454, 457, n. 1 (M.D. Pa. 2010)(citing *Egervary v. Young*, 366 F.3d 238, 246 (3d Cir. 2004)).  To state a claim under *Bivens*, Plaintiff must allege that he was deprived of a federal right by a person who was acting under color of federal law. *See Young v. Keohane*, 809 F.Supp. at 1199; *West v. Atkins*, 487 U.S. 42, 48, 108 S.Ct. 2250 (1988).

---

[4]Pub. L. No. 104-134, 110 Stat. 1321 (April 26, 1996).

It is well established that personal liability in a civil rights action cannot be imposed upon a state official based on a theory of *respondeat superior*. *See, e.g., Rizzo v. Goode*, 423 U.S. 362 (1976); *Hampton v. Holmesburg Prison Officials*, 1546 F.2d 1077, 1082 (3d Cir. 1976). It is also well-settled in the Third Circuit that personal involvement of defendants in alleged constitutional deprivations is a requirement in a civil rights case and that a complaint must allege such personal involvement. *Sutton v. Rasheed*, 323 F.3d 236, 249-250 (3d Cir. 2003). Each named defendant must be shown, through the complaint's allegations, to have been personally involved in the events or occurrences upon which Plaintiff's claims are based. *Id.* As the Court stated in *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998):

> A defendant in a civil rights action must have personal involvement in the alleged wrongs . . . . [P]ersonal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence. Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity. (Citations omitted).

*See also Fisher v. Matthews,* 792F.Supp.2d 745, 2011 WL 1982920, * 23 (M.D. Pa. 2011) *(citing Rode, supra).*

The Court uses the same standard to screen a complaint under the PLRA as it does for a 12(b)(6) motion to dismiss. *See Banks v. County of Allegheny*, 568 F.Supp.2d at 588.

### C.  MOTION TO DISMISS STANDARD

In *Reisinger v. Luzerne County*, 712 F.Supp. 2d 332, 343-344 (M.D. Pa. 2010), the Court stated:

> The Third Circuit Court of Appeals recently set out the appropriate standard applicable to a motion to dismiss in light of the United States Supreme Court's decisions *Bell Atlantic Corp. v. Twombly,* 550 U.S. 433 (2007), and *Ashcroft v. Iqbal,* -

5

-- U.S. ----, 129 S.Ct. 1937 (2009).  "[T]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true to 'state a claim that relief is plausible on its face.' " *Iqbal,* 129 S.Ct. at 1949 (citing *Twombly,* 550 U.S. at 570). The Court emphasized that "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 1950. Moreover, it continued, "[d]etermining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* (citation omitted).  *McTernan v. City of York,* 577 F.3d 521, 530 (3d Cir.2009). The Circuit Court discussed the effects of *Twombly* and *Iqbal* in detail and provided a road map for district courts presented with a motion to dismiss for failure to state a claim in a case filed just a week before *McTernan, Fowler v. UPMC Shadyside,* 578 F.3d 203 (3d Cir.2009).

[D]istrict courts should conduct a two-part analysis. First, the factual and legal

elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. [ *Iqbal,* 129 S.Ct. at 1949.] Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." *Id.* at 1950. In other words, a complaint must do more than allege a plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts. *See Philips [v. Co. of Allegheny],* 515 F.3d [224,] 234-35 [ (3d Cir.2008) ]. As the Supreme Court instructed in *Iqbal,* "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.' " *Iqbal,* 129 S.Ct. at 1949. This "plausibility" determination will be "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*.
*Fowler,* 578 F.3d at 210-11.

The Circuit Court's guidance makes clear that legal conclusions are not entitled to the same deference as well-pled facts. In other words, "the court is 'not bound to accept as true a legal conclusion couched as a factual allegation.' " *Guirguis v. Movers Specialty Services, Inc.,* No. 09-1104, 2009 WL 3041992, at *2 (3d Cir. Sept. 24, 2009) (quoting *Twombly,* 550 U.S. at 555) (not precedential).

III.    **ALLEGATIONS OF COMPLAINT.**[5]

In his present pleading, Doc. 1, pp. 1-6,  Plaintiff raises an Eighth Amendment denial of medical care claim.[6]  (Doc. 1, p. 2).  Plaintiff basically alleges that Defendants stopped his long prescribed psychotropic medication bupropion which he needed for his serious mental health conditions and refused to restore his prescription despite his deterioration. Also, Plaintiff appears to be raising a negligence action against Defendant United States under the Federal Torts Claims Act.  (*Id.*).  Plaintiff names as Defendants: (1) J. Sage, Chief Psychologist (2) Dr. Kevin Pigos, Clinical Directo; (3) Dr. Brown; (4) Dr. Andrew Edinger; (5) S. Dees, NREMT-P; (6) USP-Lewisburg Associate Warden Holzaple; (7) USP-Lewisburg Warden J.E. Thomas; (8) John Does 1-10; (9) Federal Bureau of Prisons ("BOP"); and (9) the United States.  Defendants Sage, Pigos, Brown, Edinger, and Dees are employed by the BOP at USP-Lewisburg with the medical department.

Plaintiff states that Defendants Sage, Pigos, Brown, Edinger, and Dees failed to provide him with adequate medical care and mental health treatment.  (Doc. 1, pp. 2-3).  It appears Plaintiff was diagnosed with multiple mental health conditions, including Atypical Mood Disorder, Atypical Depressive Disorder, Borderline Personality Disorder, and Bipolar Disorder.

---

[5]We note that the Court can consider Plaintiff's Exhibits even though his Complaint is being screened under the standard for a Motion to Dismiss because his claims are based on them.  *See Pension Benefit Guarantee Corp. v. White Consol. Indus.,* 998 F.2d 1192, 1196 (3d Cir.1993).

[6]Plaintiff does not explicitly mention the Eighth Amendment in his Complaint, but we construe his alleged denial of medical treatment to be an Eighth Amendment issue.

(*Id.*, p. 2).  Plaintiff's Exhibits, including his BOP medical records, indicate he was taken off of his medication on October 3, 2013, specifically "bupropion," because "he was 'sleeping'" and missed his last three doses.  (Doc. 1-1, pp. 11, 20).  On November 18, 2013, Plaintiff alleges that he confronted Defendant Edinger with a  request to restart his bupropion medication.  According Plaintiff 's own Exhibits,  Defendant Edinger wrote in his medical report on November 18, 2013, that he would not restart Plaintiff's bupropion prescription because Plaintiff lacked depression symptoms, and "[t]o make matters worse, his current cell mate is currently under suspicion for potential abuse of   bupropion, the exact drug that [Plaintiff] is requesting." (*Id.*, p. 23).[7]  Therefore, Plaintiff's own Exhibits show that due to Plaintiff's lack of symptoms, his non-compliance  and his cell mate's potential abuse of bupropion,  Plaintiff's medication was discontinued by the prison medical staff. (*See* Doc. 1-1, pp. 3 & 5).

Plaintiff was placed on suicide watch on February 4, 2014.  (*Id.*, p. 12).  Plaintiff noted on his medical record that on February 5, 2014, he attempted suicide by hanging himself, despite being on suicide watch.  (*Id.*).  Also, on February 5, 2014, an Incident Report was issued against Plaintiff stating that Plaintiff refused to wear his suicide smock and continuously threatened members of the medical staff.  (Doc. 1-1, p. 13).

Plaintiff's medical records indicate that on February 11, 2014, Plaintiff was taken off of

_____

[7]We note that the "Declaration of Derrick Miller," Plaintiff's cell mate, contains identical handwriting to Plaintiff's Complaint.  (Doc. 1-1, p. 14).  Plaintiff's own handwriting is shown on some of his Exhibits, such as his Inmate Requests to Staff (Doc. 1-1, p. 9), which is different than Derrick Miller's handwriting in his Declaration.  Thus, it appears that Derrick Miller, Plaintiff's cell-mate who  was under suspicion of bupropion abuse, may have written Plaintiff's Complaint.

suicide watch.  (*Id.*, p. 16).  Later that day, Plaintiff noted on his medical record that he was

returned to his cell and cut his left wrist.  (*Id.*).  As stated above, Derrick Miller, Plaintiff's cell

mate, avers in his Declaration that there was "something clearly wrong with my celly (sic)" and

"seen (sic) inmate Mitchell cutting his left wrist repeatedly." (*Id.*, p. 14).  Plaintiff's medical

record reveals that "[Plaintiff] was in the cell and was noted to have several small abrasions to

the left forearm." (*Id.*, p. 16).  Later on February 11, 2014, Plaintiff was examined by Defendant

Dees, who wrote in the clinical report that "[inmate] is noted to have a normal exam of his

hands and wrists with no injuries." (*Id.*, pp. 21-22).  Further, Defendant Dees wrote "[inmate]

voices no other complaints and is noted to have no other injuries at this time." (*Id.*).

From these facts, Plaintiff contends that Defendants Sage, Pigos, Brown, Edinger, and

Dees denied him proper medical care and treatment in violation of the Eighth Amendment.

(Doc. 1,  pp. 2-3).  Additionally, Plaintiff names prison supervisors Associate Warden Holzaple

and Warden J.E. Thomas as Defendants.  (*Id.*, pp. 3-4).  Plaintiff contends that Defendants

Holzaple and Thomas failed to assist Plaintiff's request for appropriate mental health treatment.

(*Id.*).  Specifically, Plaintiff avers that "Defendant Thomas has a duty to ensure Plaintiff's mental

health care needs is (sic) met, either at this facility or an appropriate Bureau of Prisons medical

facility." (*Id.*, p. 4).  Further, Plaintiff states "[c]learly psychology staff (sic) is encouraged by

Defendant Thomas to practice mal-practice, which is Psycho-Political-Terrorism." (*Id.*).

Plaintiff also names John Does 1-10 as Defendants in his caption of his Complaint.  (*Id.*,

p. 1).  However, Plaintiff fails to allege anywhere in his 6-page Complaint that there was any

wrongdoing committed by John Does 1-10.  In fact, Plaintiff does not mention the John Does at

all in his pleading.  Finally, Plaintiff names the BOP and United States as Defendants.  (*Id.*).

Plaintiff indicates he is suing Defendants in their official and individual capacities.  (*Id.* at 5).  Plaintiff requests relief in the form of compensatory damages an amount of $150,000 for tort liability.  (*Id.*).  Additionally, Plaintiff requests $5,000,000 from each Defendant, for a total of $95,000,000, in the form of punitive damages.  (*Id.*).

Plaintiff avers that each Defendant was deliberately indifferent to his medical condition and willfully chose to ignore his symptoms, which ultimately led to his suicide attempts.  (*Id.*).  Thus, Plaintiff believes the medical staff has failed to provide him with adequate medical treatment in violation of the Eighth Amendment.  In addition, Plaintiff appears to be raising a general negligence claim  against Defendants BOP and the Untied States under the Federal Torts Claim Act.

## IV.   DISCUSSION.

We begin by addressing Plaintiff's request for specific damages, *i.e.*, $150,000 in compensatory damages and $95,000,000 in punitive damages.  (Doc. 1, p. 5).  Since Plaintiff seeks unliquidated damages, he cannot claim specific sums of relief.  Pursuant to Local Rule 8.1, M.D. Pa., we will recommend that Plaintiff's requests for specific monetary damages be stricken from his Complaint. *See Stuckey v. Ross*, Civil No. 05-2354, M.D. Pa., 1-9-06 Order, J. McClure; *Said v. Donate*, Civil No. 07-1550, M.D. Pa.

Plaintiff has named each Defendant in his or her official and individual capacities.  In a *Bivens* suit, however, sovereign immunity bars Plaintiff from bringing a *Bivens* action for money damages against a Defendant in his or her official capacity as a federal agent.  *See FDIC v.*

10

*Meyer*, 501 U.S. 471, 475 (1994); *Lewal v. Ali*, 289 Fed.Appx. 515, 516 (3d Cir. 2008).  The Third Circuit has held that a Plaintiff who filed an *in forma pauperis* request and whose Complaint fails to state a cognizable claim is entitled to amend his pleading unless the Court finds bad faith, undue delay, prejudice, or futility.  *See Grayson v. Mayview State Hospital*, 293 F.3d 103, 111 (3d Cir. 2002)*;  Alston v. Parker*, 363 F.3d 229, 235-236 (3d Cir. 2004).  Thus, insofar as Plaintiff is seeking damages against the Defendants in their official capacities, such claims should be dismissed with prejudice since it would be futile to allow Plaintiff to amend such claims for damages.

Plaintiff also names the United States and the BOP as Defendants for violation of his civil rights, *i.e.*, denial of proper medical care.  However, the law is clear that *Bivens* "only authorizes suit against federal officials in their individual capacities and not against the United States and federal agencies."  *Goodson v. Maggi*, 2010 WL 1006901, *7 (W.D. Pa. 2-22-10); *Debrew v. Auman*, 354 Fed. Appx. 639, 641 (3d Cir. 2009)("no claims [under *Bivens*] could properly be brought against Defendants in their official capacities.")(citation omitted).

The Court in *Johnson* v. *U.S. Attorney's*, 2010 WL 2991409, *2-*3 (E.D.Pa. July 27, 2010), stated:

> An action brought against federal agencies, or federal employees in their official capacities, is effectively an action against the United States. *Ky v. Graham,* 473 U.S. 159, 165-66, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985). It is well settled that the United States has sovereign immunity except where it consents to be sued. *United States v. Mitchell,* 445 U.S. 535, 538, 100 S.Ct. 1349, 63 L.Ed.2d 607 (1980). Sovereign immunity extends to government agencies and employees sued in their official capacities. *Antol v. Perry,* 82 F.3d 1291, 1296 (3d Cir.1996). In addition, a waiver of sovereign immunity "cannot be implied but must be unequivocally expressed." *Mitchell,* 445 U.S. at 538.

11

First, regarding Johnson's constitutional claims against the Federal Defendants, Congress has never waived sovereign immunity for constitutional tort claims against the United States, its agencies, or employees sued in their official capacity. *FDIC v. Meyer,* 510 U.S. 471, 478, 114 S.Ct. 996, 127 L.Ed.2d 308 (1994); *Graham,* 473 U.S. at 166-68. In addition, Congress has not waived sovereign immunity for RICO claims, *Jennette v. Holsey,* No. 06-874, 2006 WL 1984734, at *1 (M.D.Pa. May 31, 2006); *Delker v. United States,* No. 86-2712, 1986 WL 11701, at *1 (E.D.Pa. Oct.16, 1986), or for claims for conspiracy to interfere with civil rights under 42 U.S.C. § 1985, and negligent failure to prevent conspiracy to interfere with civil rights under 42 U.S.C. §1986. *Davis v. U.S. DOJ,* 204 F.3d 723, 726 (7th Cir.2000); *Affiliated Prof'l Home Health Care Agency v. Shalala,* 164 F.3d 282, 286 (5th Cir.1999); *Biase v. Kaplan,* 852 F.Supp. 268 (D.N.J.1994); *Wilson v. Rackmill,* No. 87-456, 1990 WL 63504 at *4 (E.D.Pa. May 11, 1990).

Sovereign immunity is jurisdictional in nature. Indeed, the 'terms of [the United States'] consent to be sued in any court define that court's jurisdiction to entertain the suit.' " *FDIC,* 510 U.S. at 475. Thus, because the United States has not waived its sovereign immunity for constitutional tort, RICO, or §§ 1985 and 1986 claims against its agencies or its federal employees in their official capacities, these claims against the Federal Defendants must be dismissed for lack of subject matter jurisdiction pursuant Federal Rule of Civil Procedure 12(b)(1).

Thus, we will recommend that Defendants United States and BOP be dismissed with prejudice as to Plaintiff's *Bivens* action.  Based on the above, we find futility in allowing Plaintiff to amend his constitutional claims against Defendants Untied States and BOP with respect to his *Bivens* action.  *See Grayson*, *supra*.

Insofar as Plaintiff is raising a negligence claim against all Defendants, Plaintiff can only name the United States in his Complaint with respect to his negligence claim and this claim must be brought under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §2675, *et seq*.  Plaintiff cannot assert any of his negligence claims against individuals employed by the BOP and he must assert all of his negligence claims against only the United States through the FTCA.  *See Thomas v. U.S.*, 558 F.Supp. 2d 553, 554 (M.D. Pa. 2008)*;  Woods v. Federal Bureau of Prisons*, 2011

WL 6888648 (M.D. Pa. 11-22-11). Thus, only the Untied States is the proper Defendant in an FTCA action because the United States has waived sovereign immunity.  *See Braget  v. U.S. Bureau of Prisons,* 2011 WL 7658892, *6 (M.D. Pa. 12-28-11) adopted by 2012 WL 1165465 (M.D. Pa. 4-9-12);  *Sash v. Hogsten*, 2008 WL 618945 (M.D. Pa.).   As such, to the extent that Plaintiff is claiming negligence against the individual Defendants and against the BOP, we will recommend this claim be dismissed with prejudice.  Additionally, we find futility in allowing Plaintiff to amend his Complaint with regard to negligence against the individual Defendants and against the BOP.  *See Grayson, supra.*

Additionally, the provisions of the FTCA govern all claims against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the government while acting within the scope of his office or employment.  28 U.S.C. § 2675(a); *see also Braget v. U.S. Bureau of Prisons*, 2011 WL 7658892, *6  (M.D. Pa. 12-28-11) adopted by 2012 WL 1165465 (M.D. Pa. 4-9-12); *Rosario v BOP*, 2007 WL 951468, *4 (M.D. Pa.).  According to the FTCA, "an action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury ... unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail." 28 U.S.C. § 2675(a).  Thus, a private Plaintiff may not sue the United States  under the FTCA without first having filed a claim with the appropriate responsible federal agency. *Id.*; *see Albani v. U.S.*, 2010 WL 2364426, *6 (E.D. Pa. June 9, 2010).

As previously mentioned, Plaintiff indicates he has "exhausted his remedies." Also, as noted, Plaintiff's Exhibits seem to indicate that he exhausted his BOP administrative with respect to his Eight Amendment denial of proper medical car claim.   Neither Plaintiff's Complaint nor his Exhibits indicate that he filed a tort claim with the BOP and exhausted his administrative remedies with respect to such a claim as required by the FTCA.   Regardless, Plaintiff clearly has not alleged the necessary elements to state a cognizable negligence claim.

Under Pennsylvania law, "[a] prima facie negligence claim requires the Plaintiff to show that: (1) the Defendant had a duty to conform to a certain standard of conduct; (2) the Defendant breached that duty; (3) such breach caused the injury in question; and (4) the Plaintiff incurred actual loss or damages."   *Farina v. Miggys Corp. Five & Six*, 2010 WL 3024757, *3 (M.D. Pa. 7-29-10)(quoting *Krentz v. Consol. Rail Corp.*, 589 Pa. 576, 910 A.2d 20, 27 (Pa. 2007)).   Plaintiff has not stated the necessary elements of negligence in his Complaint.   As such, to the extent Plaintiff is raising a negligence claim against the United States under the FTCA, we will recommend such a claim be dismissed without prejudice to file it as a separate action after he files a tort claim with the BOP and exhausts his administrative remedies.

To the extent that Plaintiff names ten (10) John Does as Defendants, we find they should be dismissed without prejudice since Plaintiff fails to state any personal involvement by each one of his ten Does Defendants with respect to his Eighth Amendment claim.   In a *Bivens* civil rights action, the Plaintiff must prove the following two essential elements:  (1) that the conduct complained of was committed by a person acting under color of federal law; and (2) that the conduct complained of deprived the Plaintiff of rights, privileges or immunities secured by the

law or the Constitution of the United States. *Naranjo v. Martinez*, 2009 WL 4268598, *6 (M.D. Pa. 2009). Plaintiff clearly fails to allege any personal involvement by the ten John Does with respect to his constitutional claim. As previously stated, the John Does are not mentioned anywhere in Plaintiff's Complaint, except for the caption. (Doc. 1). As such, we find that John Does 1-10 should be dismissed without prejudice because Plaintiff has not alleged they were personally involved in the violation of his constitutional rights.

Associate Warden Holzaple and Warden Thomas are also named as Defendants in Plaintiff's Complaint. With regard to Defendant Holzaple, Plaintiff alleges "Defendant Holzaple failed to assist in Plaintiff quest (sic) for appropriate mental health treatment although he actually responded to Plaintiff's request to staff." (Doc. 1, p. 3). Also, Plaintiff states that "[a]s Associate Warden of Operations [Defendant Holzaple] has a duty to direct staff to provide necessary and appropriate medical mental health care and treatment." (*Id.*). Plaintiff has failed to allege sufficient personal involvement of Defendant Holzaple with regard to his constitutional claims. Rather, it is clear that Plaintiff has named Defendant Holzaple solely on the basis of *respondeat superior*, which is not permissible in a civil rights action. Further, insofar as Plaintiff names Associate Warden Holzaple as a Defendant based on his response to Plaintiff's Inmate Request to Staff, it is well-settled that a prison official's handling of prison grievance procedures does not equate to personal liability in a civil rights claim. *Burnside v. Moser*, 138 Fed. Appx. 414 (3d Cir. 2005) (Even "[i]f the state elects to provide a grievance mechanism, violations of its procedures do not ... give rise to a [constitutional] claim.") (citations omitted). *See also Mitchell v. Dodrill*, 696 F.Supp.2d 454, 469 (M.D.Pa. 2010).

Plaintiff also avers that Defendant Thomas knew about Plaintiff's mental health diagnosis and "has a duty to ensure Plaintiff's mental health care needs is (sic) met, either at this facility or an appropriate Bureau of Prisons medical facility." (Doc. 1, p. 4).  Specifically, Plaintiff relies on the above referenced April 2, 2014 letter from an intern with the Washington Lawyers' Committee to the "Warden's Office" at USP-Lewisburg, indicating their concern over Plaintiff's treatment for depression.  (Doc. 1-1, pp.24-25).   To the extent that Plaintiff is attempting allege Defendant Thomas' personal involvement in depriving Plaintiff of his civil rights due to the aforementioned letter, we find this claim to be insufficient.  Defendant Thomas was clearly not *personally* involved in any alleged constitutional deprivations.  In addition, we find that allowing Plaintiff's claim against Defendant Thomas to proceed, simply on the basis of a letter from an intern to the "Warden's Office," would essentially enable prisoners to allege the personal involvement of wardens in almost every circumstance.  Like Defendant Holzaple, we find that Plaintiff has impermissible named Defendant Thomas solely on the basis of *respondeat superior*.

In *George v. PA DOC*, 2010 WL 936778, *4 (M.D. Pa.), the Court stated:

> The doctrine of *respondeat superior* does not apply to constitutional claims. *See Ashcroft v. Iqbal,* --- U.S. ----, ----, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) ("Government officials may not be held liable for unconstitutional conduct of their subordinates under a theory of *respondeat superior.*"); *see also Evancho v. Fisher,* 423 F.3d 347, 353 (3d Cir.2005) (claims brought under 42 U.S.C. § 1983 cannot be premised on a theory of *respondeat superior*) (citing *Rode v. Dellarciprete,* 845 F.2d 1195, 1207 (3d Cir.1988)). Rather, each named defendant must be shown, via the complaint's allegations, to have  been personally involved in the events underlying a claim. *Iqbal, supra,* --- U.S. at ----, 129 S.Ct. at 1948 ("[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.") "Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." *Rode,* 845

F.2d at 1207. "In order to satisfy the 'personal involvement' requirement, a [§ 1983] complaint need only allege the conduct, time, place and person responsible." *Solan v. Ranck,* 326 F. App'x 97, 101 (3d Cir.2009) (per curiam) (non-precedential).

*See also Santiago v Warminister Tp.*, 2010 WL 5071779, * 5 (3d Cir. 12-14-10).

The Court in *Rogers v. U.S.,* 696 F.Supp.2d 472, 488 (W.D. Pa. 2010)*,* repeated the

personal involvement necessary in civil rights action, and stated:

> When a supervisory official is sued in a civil rights action, liability can only be imposed if that official played an "affirmative part" in the complained-of misconduct. *Chinchello v. Fenton,* 805 F.2d 126, 133 (3d Cir.1986). Although a supervisor cannot encourage constitutional violations, a supervisor has "no affirmative constitutional duty to train, supervise or discipline so as to prevent such conduct." *Id. quoting Brown v. Grabowski,* 922 F.2d 1097, 1120 (3d Cir.1990), *cert. denied,* 501 U.S. 1218, 111 S.Ct. 2827, 115 L.Ed.2d 997 (1991). The supervisor must be personally involved in the alleged misconduct. *Rode v. Dellarciprete,* 845 F.2d 1195, 1207 (3d Cir.1988). Section 1983 [or 1331] liability cannot be predicated solely on *respondeat superior. Rizzo v. Goode,* 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976); *see also Monell v. Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) (superiors of line officers who act in violation of constitutional rights may not be held liable on a theory of vicarious liability merely because the superior had a right to control the line officer's action); *Robinson v. City of Pittsburgh,* 120 F.3d 1286, 1293-1295 (3d Cir.1997) (to hold police chief liable under § 1983 [or1331] for violating female subordinate officer's rights, she was required to prove that he personally participated in violating the her rights, that he directed others to violate her rights, or that he had knowledge of and acquiesced in his subordinates' violations). If a grievance official's only involvement is investigating and/or ruling on an inmate's grievance after the incident giving rise to the grievance has already occurred, there is no personal involvement on the part of that official. *Rode,* 845 F.2d at 1208; *Cooper v. Beard,* 2006 WL 3208783 at *14 (E.D.Pa. Nov. 2, 2006).

Additionally, in *Saltzman v. Independence Blue Cross*, 2009 WL 1606887, *4 (E.D. Pa.),

the Court stated:

17

The Court in *Iqbal* explained that, although a court must accept as true all of the factual allegations contained in a complaint, that requirement does not apply to legal conclusions; therefore, pleadings must include factual allegations to support the legal claims asserted. *Id.* at 1949, 1953. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 1949 (citing *Twombly,* 550 U.S. at 555); *see also Phillips v. County of Allegheny,* 515 F.3d 224, 232 (3d Cir.2008) ("We caution that without some factual allegation in the complaint, a claimant cannot satisfy the requirement that he or she provide not only 'fair notice,' but also the 'grounds' on which the claim rests." (citing *Twombly,* 550 U.S. at 556 n. 3)). Accordingly, to survive a motion to dismiss, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 129 S.Ct. at 1949 (citing *Twombly,* 550 U.S. at 556).

Based on the above-detailed allegations in Plaintiff's Complaint, it is clear that Plaintiff fails to state the requisite factual specificity and allegations of personal involvement with regard to his constitutional claims against Defendants Holzaple and Thomas. Therefore, because it appears that Plaintiff has named Defendants Holzaple and Thomas in his Complaint solely on the basis of *respondeat superior*, which is not permissible in a civil rights action, we will recommend that Defendants Holzaple and Thomas be dismissed from this action with prejudice.

Additionally, we find that Plaintiff has failed to state Eighth Amendment claims against Defendants Holzaple and Thomas, non-physicians, since Plaintiff readily admits and his Exhibits show that he was given medical care by the medical Defendants and he received attention for his mental conditions by these Defendants. *Durmer v. O'Carroll*, 991 F.2d. 64, 69 (3d. Cir. 1993); *see also Thomas v. Zinkel,* 155 F. Supp. 2d 408, 413 (E.D. Pa. 2001)(Prison officials "who are not physicians cannot be considered deliberately indifferent simply because they failed to respond directly to the medical complaints of a prisoner who was already being treated by the

prison doctor."(citing *Durmer*, 991 F. 2d at 69 n. 14));  *Newton v. Reitz*, 2009 WL233911("non-physician Defendant cannot be held liable for being deliberately indifferent to an inmate's medical needs where, as here, the inmate is receiving treatment from the institution's health care staff.")(citing *Durmer*, 991 F. 2d at 69); *Meekins v. Law*, 2007 WL 2318118, * 3 (M.D. Pa. 8-8-07); *Ponzini v. Monroe County*, 897 F.Supp.2d 282, 293 (M.D. Pa. 2012).

Based on the above, we find futility in allowing Plaintiff to amend his constitutional claims against Defendants Holzaple and Thomas with respect to his *Bivens* action.  *See Grayson*, *supra*.   Thus, as stated, we will recommend that Defendants Holzaple and Thomas be dismissed from this action with prejudice.

Plaintiff names medical Defendants Sage, Pigos, Brown, Edinger, and Dees with respect to his denial of proper medical care claim.  In *Carpenter Carpenter v. Kloptoski*, 2011 WL 995967, *6 (M.D. Pa. 3-17-11)*, the Court stated:

> To demonstrate a prima facie case of Eighth Amendment cruel and unusual punishment based on the denial of medical care, plaintiff must establish that defendants acted with deliberate indifference to his serious medical needs. *Estelle v. Gamble,* 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976); *Durmer v. O'Carroll,* 991 F.2d 64, 67 (3d Cir.1993). There are two components to this standard: First, a plaintiff must make an "objective" showing that the deprivation was "sufficiently serious," or that the result of the defendant's denial was sufficiently serious. Additionally, the plaintiff must make a "subjective" showing that defendant acted with "a sufficiently culpable state of mind." *Wilson v. Seiter,* 501 U.S. 294, 298, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991); *see also Montgomery v. Pinchak,* 294 F.3d 492, 499 (3d Cir.2002). The "deliberate indifference to serious medical needs" standard is obviously met when pain is intentionally inflicted on a prisoner, when the denial of reasonable requests for medical treatment exposes the inmate to undue suffering or the threat of tangible residual injury, or when, despite a clear need for medical care, there is an intentional refusal to provide that care. *See Spruill v. Gillis,* 372 F.3d 218, 235 (3d Cir.2004) (quoting *White v. Napoleon,* 897 F.2d 103, 109 (1990); *Monmouth County Corr. Inst. Inmates v. Lensario,* 834

19

F.2d 326, 346 (3d Cir.1987).

Plaintiff contends that Defendant Sage "failed to provide Plaintiff adequate mental health treatment," was "aware of Plaintiff's current diagnosis and his substantiated history of mental illnesses," and "chose to ignore the symptoms of deteriation (sic) and continued to be indifferent to his mental health needs." (Doc. 1, p. 2).  Plaintiff's Exhibits indicate Defendant Sage[8] attempted to speak to Plaintiff while Plaintiff was in the suicide watch room, but left the area when Plaintiff refused to wear the smock and threatened Defendant Sage.  We find that Plaintiff has clearly not alleged with factual specificity as to how Defendant Sage denied Plaintiff medical care, *i.e.*, personally participated in the decision to deny Plaintiff medical care for his mental conditions.  Thus, we will recommend that Defendant Sage be dismissed from the present action without prejudice since it is not clear if it would be futile to allow Plaintiff to amend his constitutional claim as against Defendant Sage.

Plaintiff alleges that "Defendant Brown was quite aware of Plaintiff's complaint and failed to provide any medication or medical assistance whatsoever nor did he actually respond to Plaintiff's request to staff even to direct Plaintiff's course of actions." (Doc. 1, p. 3).  For similar reasons as explained above, we find that Plaintiff has failed to sufficiently allege how Defendant Brown denied Plaintiff medical treatment for his serious mental health conditions.  Insofar as Plaintiff names Defendant Brown due to his lack of response to his Inmate Request to Staff, as

---

[8]The Incident Report referenced above, issued by Dr. O'Shaughnessy, mentions that he and "Chief Psychologist" went to speak with Plaintiff while in the suicide watch room. Defendant Sage is not mentioned by name in the Incident Report, but it appears that Defendant Sage is the Chief Psychologist.

stated, the law is well-settled that a prison official's handling of prison grievance procedures does not equate to personal liability in a civil rights claim. *Burnside v. Moser*, 138 Fed. Appx. 414 (3d Cir.2005) (Even "[i]f the state elects to provide a grievance mechanism, violations of its procedures do not...give rise to a [constitutional] claim.")(citations omitted). *See also Mitchell v. Dodrill*, 696 F. Supp.2d 454, 469 (M.D.Pa. 2010). Since Plaintiff has failed to properly state with sufficient specificity how Defendant Brown denied him proper medical treatment, we will recommend Defendant Brown be dismissed without prejudice.

With regard to Defendant Dees, Plaintiff avers that "Dees deliberately, maliciously, and egregriously (sic) fabricated documentation to recommend the discontinuation of his psychotropic medication out of retaliation, to specifically cause Plaintiff harm, in which she succeeded." (*Id.* at 3). Further, Plaintiff avers that "Defendant Dees was actually aware of the dangers of Plaintiff's mental illnesses untreated and chose a course of action that will address her needs instead of the needs of Plaintiff." (*Id.*). Plaintiff's Exhibits indicate Defendant Dees recommended the discontinuation of Plaintiff's medication bupropion, pending the medical director's review, because Plaintiff had missed his last three doses. Plaintiff does not sufficiently aver how Defendant Dees fabricated documentation to support her recommendation. Further, Defendant Dees did not personally participate in the final decision to deny Plaintiff his prescribed medication because she simply recommended the discontinuation of his medication which had to be approved by the medical director.

Also, Plaintiff has not stated a cognizable retaliation claim against Defendant Dees. To prevail on a retaliation claim, plaintiff must demonstrate (1) that he was engaged in protected

21

activity; (2) that he suffered an "adverse action" by  government officials; and (3) that there is "a causal link between the exercise of his constitutional rights and the adverse action taken against him." *Rauser v. Horn,* 241 F.3d 330 (3d Cir.2001) (quoting *Allah v. Seiverling,* 229 F.3d 220, 224-25 (3d Cir.2000).

As such, we find that Defendant Dees should be dismissed from this action with prejudice.  Based on the above, we find futility in allowing Plaintiff to amend his constitutional claims against Defendant Dees with respect to his *Bivens* action.  *See Grayson*, *supra*.

Plaintiff also names Dr. Pigos, the Clinical Director at USP-Lewisburg, as a Defendant. Plaintiff avers that Defendant Pigos "was aware and knew exactly when Plaintiff (sic) psychotropic (sic) medication (bupropion) was discontinued 'pending' his review." (Doc. 1, p. 2).  Plaintiff also references his Exhibits, where it appears that Defendant Pigos was personally involved in the decision to take Plaintiff off his medication.  Specifically, Defendant Pigos cosigned various medical records, including the recommendation to discontinue bupropion by Defendant Dees.  (Doc. 1-1, pp. 12 & 17 ).  Plaintiff also contends that Defendant Pigos failed to acknowledge his Inmate Requests to Staff.  With regard to the Eighth Amendment denial of proper medical care claim, we find that Plaintiff has sufficiently alleged personal involvement of Defendant Dr. Pigos.  Thus, we will recommend that Plaintiff be allowed to proceed with his Complaint as against Defendant Dr. Pigos.

With respect to Defendant Dr. Edinger, Plaintiff contends "this Defendant not only failed to recommend that restoration of that medication but any medication at all to treat Plaintiff's substantiated illnesses." (Doc. 1, p. 3).  Plaintiff also refers to an Exhibit, namely, the clinical

22

administrative note dated November 18, 2013.  (Doc. 1-1, p. 23).  In this medical record, Defendant Dr. Edinger noted that Plaintiff had confronted him and requested that his bupropion medication be restarted.  Dr. Edinger noted that Plaintiff's medication was discontinued since he had missed three doses of his medication in a row, but also showed no symptoms of depression.  (*Id*.).  Defendant Dr. Edinger also wrote that bupropion was contraindicated as the sole drug for Plaintiff's bipolar disorder.  In addition, Defendant Edinger was suspect because Plaintiff's cell mate was under suspicion of abusing bupropion, the exact drug Plaintiff was requesting.  (*Id*.).  Thus, Defendant Dr. Edinger concluded "I am not inclined to restart this prescription at this time because of the lack of evidence of symptoms." (*Id*.).

However, based on Plaintiff 's allegations as well as his Exhibits, we will recommend that Plaintiff's Eighth Amendment claim against Defendant Dr. Edinger be allowed to proceed because Plaintiff has sufficiently stated the personal involvement of Edinger in the alleged improper decision to discontinue Plaintiff's medication.

## V.      RECOMMENDATION.

Based on the foregoing, we respectfully recommended that:

1)      Plaintiff's request for a specific amount of monetary damages (Doc. 1, p. 5) be **STRICKEN FROM HIS COMPLAINT**.

2)      Plaintiff's claims for damages against Defendants in their official capacities be **DISMISSED WITH PREJUDICE**.

3)      Defendants Dees, Holzaple, Thomas, BOP, and United States (under *Bivens*) be **DISMISSED WITH PREJUDICE**.

4) Defendants Brown and Sage  (under *Bivens*) be **DISMISSED WITHOUT PREJUDICE**.

5) Defendant United States (under FTCA) be **DISMISSED WITHOUT PREJUDICE**.

6) Plaintiff's negligence claim (under FTCA) against Defendants Sage, Pigos, Brown, Edinger, Dees, Holzaple, Thomas, John Does 1-10, and the BOP be **DISMISSED WITH PREJUDICE**.

7) Plaintiff's constitutional claim against Defendants John Does 1-10 be **DISMISSED WITHOUT PREJUDICE.**

8) Plaintiff's Eighth Amendment denial of medical care claim (under *Bivens*) against Defendants Pigos and Edinger be **PERMITTED TO PROCEED**.

**s/ Thomas M. Blewitt**
**THOMAS M. BLEWITT**
**United States Magistrate Judge**

**Dated: July 21, 2014**

24

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| JOSEPH MITCHELL, | : | CIVIL ACTION NO. **3:CV-14-905** |
| | : | |
| Plaintiff | : | (Judge Munley) |
| | : | |
| v. | : | (Magistrate Judge Blewitt) |
| | : | |
| J. SAGE, *et al.*, | : | |
| | : | |
| Defendants | : | |

## NOTICE

**NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing

**Report and Recommendation** dated **July 21 2014.**

Any party may obtain a review of the Report and Recommendation pursuant to

Rule 72.3, which provides:

> Any party may object to a magistrate judge's proposed findings,
> recommendations or report addressing a motion or matter described in
> 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the
> disposition of a prisoner case or a habeas corpus petition within fourteen (14)
> days after being served with a copy thereof.  Such party shall file
> with the clerk of court, and serve on the magistrate judge and all
> parties, written objections which shall specifically identify the
> portions of the proposed findings, recommendations or report to which
> objection is made and the basis for such objections.  The briefing
> requirements set forth in Local Rule 72.2 shall apply.  A judge shall
> make a *de novo* determination of those portions of the report or
> specified proposed findings or recommendations to which objection
> is made and may accept, reject, or modify, in whole or in part, the findings
> or recommendations made by the magistrate judge.  The judge, however,
> need conduct a new hearing only in his or her discretion or where
> required by law, and may consider the record developed before the
> magistrate judge, making his or her own determination on the basis
> of that record.  The judge may also receive further evidence, recall
> witnesses or recommit the matter to the magistrate judge with

instructions.

Failure to file timely Objections to the foregoing Report and Recommendation may constitute a waiver of any appellate rights.


 

 

                        **s/ Thomas M. Blewitt**
_____  **THOMAS M. BLEWITT**
                        **United States Magistrate Judge**

**Dated: July 21, 2014**